IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JEROME SMOAK, JR., ) | C/A No. 5:11-597-DCN-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | REPORT AND |
| ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Income Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action.

I. Relevant Background

    A. Procedural History

Plaintiff protectively filed his DIB application on April 28, 2009, alleging that his disability began on May 29, 2008 (the alleged onset of disability or "AOD"). Tr. 115, 166. His application was denied initially and upon reconsideration. Tr. 53, 55. At Plaintiff's request, an Administrative Law Judge ("ALJ") held a hearing on July 23, 2010, at which Plaintiff and a vocational expert ("VE") testified. Tr. 25-51.

The ALJ issued a partially favorable decision dated October 8, 2010. Tr. 15-24. The Appeals Council denied Plaintiff's request for review of that decision, Tr. 1, making it the final decision for purposes of judicial review. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on March 11, 2011. ECF No. 1.

### B. Plaintiff's Background and Medical History

#### 1. Background

Plaintiff alleged that he has four years of college, Tr. 32, and the ALJ found that he was at least a high school graduate, Tr. 23. Plaintiff was 60 years old on the date of the ALJ's decision. *See* Tr. 115. He has past relevant work ("PRW") in the banking industry. *See* Tr. 47.[1]

#### 2. Summary of Medical Evidence

In September 2006, Plaintiff underwent magnetic resonance imaging ("MRI") of his lumbar spine which showed degenerative disc disease at all levels. Tr. 287-88. A second MRI in May 2008 indicated that the degenerative disease had progressed since 2006. Tr. 285-86.

Plaintiff saw physicians at the Southeastern Spine Institute ("the Institute") several times, beginning in May 2008. *See* Tr. 292. In April 2009, Plaintiff saw the Institute's Dr. Thomas Roush, who recommended that Plaintiff undergo a realignment indirect decompression of the lumbar spine. Tr. 296. The following month, Dr. Roush performed an L1 through L5 anterior and posterior spinal fusion of Plaintiff's lumbar spine. Tr. 377.

In October 2009, the Institute's Dr. Steven Poletti saw Plaintiff and noted that he had a dislodged L5 screw-rod interface that was not grossly displaced and showed no signs of non-union. Tr. 551. Dr. Poletti observed that Plaintiff's surgical result looked very good and he did not appear to need further surgery. *Id.*

---

[1] Plaintiff's PRW in the banking industry is discussed more fully within.

On June 11, 2010, Dr. Poletti opined, *inter alia*, that Plaintiff was subject to marked restrictions in his activities of daily living and in social functioning, and that he experienced deficiencies in concentration, persistence or pace. Tr. 607. Dr. Poletti added that Plaintiff was subject to severe pain that limited standing and sitting to 15 minutes at one time, precluded lifting, and allowed only one hour of work per day.[2] Tr. 609, 611.

3. State Agency Expert Opinions

State agency consultant Jim Liao, M.D., reviewed the record and assessed Plaintiff's physical residual functional capacity ("RFC") on September 28, 2009. Tr. 472-79. Dr. Liao opined that Plaintiff could perform work at the "sedentary" level of exertion, as indicated by the ability to occasionally lift and/or carry ten pounds; frequently lift and/or carry less than ten pounds; sit for about six hours in an eight-hour workday; and stand and/or walk for a total of at least two hours in an eight-hour work day. Tr. 473. *See* 20 C.F.R. § 404.1567(a). He further found that Plaintiff was unlimited in his ability to push and/or pull. Dr. Liao listed postural limitations as only occasional balancing, stooping, kneeling, crouching, and climbing of ramps/stairs, and no crawling or climbing of ladders/ropes/scaffolds. Tr. 474. Dr. Liao opined that Plaintiff's exposure to hazards should be limited because of his multiple medications, Tr. 476, and that Plaintiff's overhead reaching should only be occasional, Tr. 475.

Dr. Liao opined that Plaintiff's musculoskeletal complaints were "severe,"[3] and his symptoms were credible. Tr. 479. As Plaintiff was only four months post-back surgery, Dr. Liao

---

[2] Dr. Poletti's June 2010 medical statements are dated after the ALJ's established disability onset date of February 1, 2010.

[3] An impairment is severe when, either by itself or in combination with other impairments, it "significantly limits" a claimant's physical or mental abilities to perform basic work activities. 20 C.F.R. § 404.1521(a).

3

expected that he should have further functional improvement to allow for at least a sedentary RFC by May 27, 2010. The doctor opined that, prior to his surgery, Plaintiff had a "light"[4] RFC. *Id.*

On July 14, 2009, and April 28, 2010, state agency psychological consultants opined that Plaintiff had "medically determinable impairments" that did not satisfy the Administration's diagnostic criteria for depression and anxiety and were not severe. Tr. 433-38; 568-73. The latter consultant added that Plaintiff's "symptoms—depression/anxiety worse—[were] not credible due to no evidence that [Plaintiff's] condition ha[d] worsened." Tr. 580.

On April 28, 2010, medical consultant ("MC") Mary Lang completed a physical RFC assessment after a review of Plaintiff's records. *See* Tr. 582-89. MC Lang opined that Plaintiff would have been able to perform only sedentary work prior to his back surgery. Tr. 583. She concluded that, after his surgery, Plaintiff would not have been able to perform "a full range of sedentary work on a consistent basis"[5] because of the "large doses [of] narcotics" that Plaintiff was taking. Tr. 583, 587.

### C. The Administrative Hearing

At the July 23, 2010 administrative hearing, Plaintiff appeared with his attorney and testified. Tr. 27. According to Plaintiff's testimony, he experienced numbness in both hands, primarily in his left hand. Tr. 31. Although there was pain, the numbness and "tingliness" led to his inability to do things like open jars. *Id.* Plaintiff had lost strength in his left hand and part of his right hand felt "number all the time." *Id.*

---

[4] The Administration has defined "light work" to include lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects up to ten pounds, and standing or walking, on and off, for six of eight hours. Social Security Ruling (SSR) 83-10, *reprinted in West's Social Security Reporting Service: Rulings 1983-1991*, at 24, 29 (West Publ'g Co. 1992) [hereinafter *Rulings 1983-1991*].

[5] MC Lang further restricted the range of sedentary work by adding limitations of a sit/stand option; no postural movements more than occasionally, and never crawling or climbing ladders, etc.; no manipulation more than frequently, other than feeling; and limiting exposure to hazards and noise. Tr. 583-86.

Plaintiff testified that his spinal surgery had not really helped, and that pain still radiated all the way down his legs. Tr. 34. For a short period after his surgery, his pain level had improved, but over time, it had worsened. Tr. 49. Plaintiff further testified he had pain shooting down his legs constantly. Tr. 34. The medication that he took relieved his pain, but it made him dizzy, drowsy, and sleepy. After taking the medication, Plaintiff would lie down or get into his recliner for 45-to-90 minutes, and wait until the medicine wore off. He would repeat this cycle at least four times a day. Tr. 35.

Plaintiff stated that, on a daily basis, he awoke around 7:30 to 8:00 a.m. *Id.* His wife got up first and brought him pain medicine. Plaintiff would lie in bed for at least thirty minutes until the pain medication took effect and then he got up, with his wife's assistance. *Id.* He was unable to bathe and dress by himself; his wife bathed his lower legs and feet and helped him with socks and shoes. Tr. 36. With his wife's help, it took Plaintiff an hour to an hour and a half to get ready for an appointment. When he was working, he had been able to get ready in 30 minutes. *Id.*

Plaintiff did no household or outdoor chores, did not attend church, and did not visit with friends. Tr. 35-36. His daily activities consisted of taking medicine, watching television, sleeping, and reading "a little bit." Tr. 43. Plaintiff said that he had a driver's license, but did not drive because his medication caused him to be dizzy and nauseous, and there were times when he could not function. Tr. 31-32. In response to questioning by the ALJ, Plaintiff added that he only drove in "an emergency," such as to the drugstore "which is right around the corner." Tr. 40. In response to questions from the ALJ, however, Plaintiff admitted that he had been driving his son to work daily and he was not sure when he stopped doing that. *Id.* The ALJ showed Plaintiff a form dated May 2009 that indicated he drove his son to school daily. *Id.*

5

Plaintiff testified that he used a cane daily; could stand at most five-to-ten minutes without leaning against something; could only sit 15-to-20 minutes before he would have to get up and move around; and could walk about 100 feet before having to rest. Tr. 37-38. Plaintiff said he had difficulty sleeping because of pain, having to re-adjust positions, and restless leg syndrome. Tr. 38.

Plaintiff said he had been in banking for 35 years. Tr. 42. As a commercial banker, he had to go to construction sites, get on ladders, and determine if everything was being built as it was supposed to be. Tr. 32. As a branch manager, he was required to move coin to the vault. The coins were heavy, weighing between 40 and 50 pounds. Tr. 33. Plaintiff also had to move supplies to the supply room, including picking up reams of paper that weighed about 30 pounds. He did some pushing and pulling, bending and stooping. The job also required him to call on customers and get deposits and loans, which required a lot of walking. *Id.*

Plaintiff added that the bank terminated his employment because of absenteeism, which Plaintiff said stemmed from his physical condition. Tr. 45. Upon questioning by the ALJ, Plaintiff admitted that there was an "inconsistency between telling the state of South Carolina that [he was] ready, willing, and able to go back to work" in order to collect unemployment compensation (through the spring of 2010), "and telling [the ALJ] that he can't work at all[.]" Tr. 42.

The VE testified that Plaintiff's PRW was loan officer, with *DOT*[6] number 186.267-018, sedentary and skilled; and branch manager, *DOT* number 186.167-070, light and skilled. Tr. 47. The VE noted that, based on Plaintiff's hearing testimony regarding "moving coins and such, that

---

[6] Emp't & Training Admin., U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. rev. 1991).

somewhere between 30 and 50 pounds, and even if he did it on an occasional basis, that would be considered medium work[]." *Id.*

The ALJ proposed the following hypothetical:

> If you would consider an individual of the claimant's age, education, and work experience, who could work at the sedentary exertional level, but who would be further limited to never climbing ladders, ropes or scaffolding or crawling, and only occasionally climbing ramps or stairs, balancing, stooping, kneeling or crouching and who could only occasionally reach overhead bilaterally and only frequently handle and finger bilaterally and would also need to avoid moderate exposure to work place hazards, with those limitations would such an individual be able to perform the claimant's [PRW]?

Tr. 47-48. The VE responded that this individual would be able to perform the loan officer position, but not the branch manager because of the lifting to which Plaintiff testified. Tr. 48. The VE added that, if there was an additional limitation to simple, routine, repetitive work, the individual would not be able to perform Plaintiff's PRW. Plaintiff added that he would be unable to perform his PRW because it required excellent credit and his condominium was in foreclosure proceedings. Tr. 49.

## II. Discussion

### A. The ALJ's Findings

In his October 8, 2010 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*).

3. Since the alleged onset date of disability, May 29, 2008, the claimant has had the following severe impairments: degenerative disc disease, lumbar radiculitis, spondylosis, status post spinal fusion, cervical radiculopathy, and lumbar degenerative scoliosis. Beginning on the established onset date of disability,

7

February 1, 2010, the claimant also has had the following severe impairments: depression and anxiety (20 CFR 404.1520(c)).

4. Since the alleged onset date of disability, May 29, 2008, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, prior to February 1, 2010, the date the claimant became disabled, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant was able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally. The claimant could never climb ladders, ropes, or scaffolds; could occasionally perform postural activities (climbing ramps and stairs, balancing, scooping, kneeling, and crouching) and reach overhead bilaterally; could frequently handle and finger; but was to avoid moderate exposure to workplace hazards.

6. After careful consideration of the entire record, I find that beginning on February 1, 2010, the claimant became unable to perform even sedentary unskilled work on a regular and continuing basis (8 hours a day, 5 days per week).

7. Prior to February 1, 2010, the claimant was capable of performing past relevant work as a loan officer. This work did not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

8. Beginning on February 1, 2010, the claimant's more restrictive residual functional capacity has prevented the claimant from being able to perform past relevant work (20 CFR 404.1565).

9. The claimant was an individual of advanced age on February 1, 2010, the established disability onset date (20 CFR 404.1563).

10. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

11. The claimant does not have work skills that are transferable to other occupations within the residual functional capacity defined above (20 CFR 404.1568).

12. Since February 1, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

13. The claimant was not disabled prior to February 1, 2010, (20 CFR 404.1520(f)) but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).

Tr. 17-23.

### B. Legal Framework

#### 1. The Commissioner's Determination-of-Disability Process

The Social Security Act (the "Act') provides that DIB shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the "Listing of Impairments" found at 20 C.F.R. part 404, subpart P, appendix 1;[7] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's sequential evaluation process. If a decision regarding disability may be made at

---

[7] All of the court's regulatory references are to the 2010 version of the C.F.R.

any step, no further inquiry is necessary. *Id.* § 404.1520(a)(4) (providing that if the Commissioner can find claimant disabled or not disabled at a step, the Commissioner makes the determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See id.* § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62, *reprinted in West's Social Security Reporting Service: Rulings 1975-1982*, at 809 (West Publ'g Co. 1983) [hereinafter *Rulings 1975-1982*]. The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that the claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the

Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971); *see also Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Johnson v. Barnhart*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C. Analysis

Plaintiff argues that the ALJ erred in the following ways: (1) by failing to evaluate his ability to perform PRW; and (2) by improperly assessing medical opinions and his credibility, thus leading to a flawed RFC evaluation. The Commissioner counters that the ALJ's decision is supported by substantial evidence and contains no harmful legal error.

Because the ALJ considered Plaintiff's RFC prior to determining whether Plaintiff could perform his PRW, the undersigned considers Plaintiff's allegations of error in reverse order.

1. RFC

As an initial matter, the court notes that Plaintiff asserts first that the ALJ erred in finding that Plaintiff "was found limited only to a full range of sedentary work prior to [February 1, 2010[8]] with no non-exertional impairments." Pl.'s Br. 33. The plain reading of the ALJ's RFC finding indicates this is not correct: the ALJ found Plaintiff's had the RFC to perform sedentary work that included postural, manipulative, and environmental nonexertional limitations. *See* Tr. 19. These limitations are also evident in his hypothetical to the VE during Plaintiff's hearing. *See* Tr. 48.

Plaintiff also discusses the ALJ's rejection of the opinion of agency consultant MC Mary Lang. The regulations require all medical opinions in a case to be considered. 20 C.F.R. § 404.1527(b). Because state agency consultants "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," the ALJ must consider their findings as "opinion evidence." 20 C.F.R. § 404.1527(e)(2)(i).

The ALJ stated that he considered the medical opinions, including those of "the state agency medical consultants." Tr. 20. He concluded that they, like he, had found that Plaintiff was not disabled. Furthermore, the ALJ explained that their opinions deserved "some weight as they are supported by the objective medical evidence of record for the period prior to February 1, 2010." *Id.*

MC Lang, however, found that Plaintiff was not disabled only up to the date of his back surgery. Tr. 583. She stated that she found Plaintiff's subjective complaints to be credible at the time of his surgery, although he experienced some improvement thereafter. Tr. 587. Plaintiff's subsequent records, however, showed that he thereafter developed cervical spine complaints and

---

[8] The ALJ found Plaintiff became disabled on February 1, 2010. Tr. 23. That date is sometimes referred to herein as Plaintiff's established disability onset date or "EDOD."

"credible" leg and back pain symptoms, which required "large doses" of narcotics, limiting Plaintiff's ability to work an eight-hour day. *Id.* MC Lang found Plaintiff's testimony that he could not perform any household chores not to be credible; however, she did not expect that he would be able to "sustain such activity on a daily basis." *Id.*

Moreover, MC Lang's assessment is not necessarily contradictory to Dr. Liao's as to disability.[9] Dr. Liao reviewed Plaintiff's records just four months after his surgery. In fact, Dr. Liao found that Plaintiff's alleged symptoms were credible, but the doctor expected "further functional improvement" to at least a sedentary RFC within one year of Plaintiff's surgery. Tr. 479. With the passage of time, MC Lang found this improvement to be only temporary, and exacerbated by Plaintiff's cervical degenerative disc disease.

In his RFC assessment, the ALJ further relied on Plaintiff's fairly normal objective findings, noting that Plaintiff "retained intact strength and sensation with a normal gait following his fusion." Tr. 20. Also, contrary to his testimony, Plaintiff's medical records show that he routinely denied side effects from his medication and did not complain of chronic drowsiness.

In considering the record as a whole, however, the undersigned cannot agree that the ALJ's statement that Plaintiff's "pain subsided and was controlled with the use of medication and treatment," Tr. 19, is supported by substantial evidence. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01, 34,487 ("Persistent attempts by the individual to obtain relief of pain . . . may be a strong indication that the symptoms are a source of distress to the individual[.]"). One month after his surgery, Plaintiff complained of back pain, Tr. 528, and although medication resolved that pain, he retained leg pain, Tr. 462. Plaintiff was fine on July 6, 2009, *see* Tr. 544, but by July 17, 2009, he was reporting dizziness, neck pain and fatigue, Tr. 524. His complaints continued thereafter.

---

[9] Dr. Liao found that, prior to his surgery, Plaintiff had been capable of light work, Tr. 479, but MC Lang felt that Plaintiff was capable of the "full range of sed[entary] work" at that time, Tr. 583.

13

On July 28, 2009, his back and leg pain had improved, but he had developed trapezial pain. Tr. 460.

On August 17, 2009, Plaintiff had continuing complaints of dizziness, low back pain, fatigue, and mood swings. Tr. 518. On September 3, 2009, he complained of leg pain and muscle weakness. Tr. 516. On September 14, 2009, he reported that he seldom took OxyContin because of the side effects. Tr. 553. On September 21, 2009, Plaintiff's complaints included sore arm and leg muscles, as well as fatigue. Tr. 513.

When Plaintiff went to the Institute on September 25, 2009, he said that his back pain had worsened such that he could barely walk. Tr. 552. At Plaintiff's October 13, 2009 urology appointment, he complained of, *inter alia*, fatigue and dizziness. Tr. 484. Plaintiff also saw FNP Mary McKinney that day with complaints of constant neck pain and depression, although his back was better. Tr. 508. But when he returned on December 1, 2009, his back pain had returned, and his depression was worse, prompting the caregiver to recommend therapy. Tr. 507. December 18, 2009 notes include reports of back and joint pain and anxiety, although Plaintiff found Wellbutrin helped his depression. Tr. 504. On January 28, 2010, Plaintiff reported dizziness; fatigue; depression; and neck, leg, and low back pain. Tr. 499.

The record before the ALJ contained only one opinion that considered Plaintiff's records for the period between May 28, 2009, and January 31, 2010—that of MC Lang. Although there is no medical opinion that Plaintiff was disabled *before* his surgery, only Dr. Liao opined that he would be able to perform substantial gainful activity afterwards, and his opinion was not based on actual records. SSR 96-8p provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 61 Fed. Reg. 34,474, 34,478. Accordingly, the undersigned recommends that the decision be

remanded with instructions that the ALJ further evaluate MC Lang's opinion. On remand, the ALJ should consider the relevant time periods and when the record opinion were provided. Upon such review, the ALJ should re-determine Plaintiff's RFC.

In challenging the ALJ's assessment of his RFC, Plaintiff also argues that the ALJ did not properly assess his credibility, Pl.'s Br. 38-44, and submits the ALJ did not specifically discuss evidence regarding Plaintiff's need for sitting restrictions or the mental impact of his conditions, *id.* at 34-38. Because the court recommends this matter be remanded for further consideration, the court does not now specifically address these remaining arguments. However, the Commissioner should consider Plaintiff's remaining allegations upon remand.

### 2. PRW

Plaintiff also alleges the ALJ erred by finding he could return to PRW as a "loan officer." Pl.'s Br. 23-32. One of the requirements for a finding of disability is that the claimant must have a medically determinable impairment(s) of such severity that he is not able to do his previous work. SSR 82-61, *Rulings 1975-1982*, *supra*, at 836; *see also* 20 C.F.R. § 404.1520(f). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he was unable to return to his PRW. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

The fact-finder can find a claimant not disabled at step four of the sequential evaluation process if he has the RFC to meet the physical and mental demands of a job the claimant has performed in the past, either the specific job the claimant performed or the same type of work as it is customarily performed throughout the economy. SSR 86-8,[10] *Rulings 1983-1991*, *supra* note 4, at 423, 430 (West Publ'g Co. 1992) [hereinafter *Rulings 1983-1991*]. Past work is "relevant" for

---

[10] SSR 86-8 was superseded by SSR 91-7c only "to the extent [SSR 86-8] discuss[es] the former procedures used to determine disability in children." SSR 91-7c, *Rulings 1983-1991*, *supra* note 4, at 815.

disability purposes if it (i) was done within the last fifteen years, (ii) lasted long enough for the claimant to learn to do it, and (iii) was substantial gainful activity. 20 C.F.R. § 404.1565(a).

If the ALJ found that Plaintiff could not perform his PRW, the regulations would require that he consult the rules established in appendix 2 to subpart P of 20 C.F.R. part 404—the Medical-Vocational Guidelines—"to direct or to guide the determination as to whether the individual is 'disabled.'" SSR 86-8, *Rulings 1983-1991*, *supra*, at 431. In the case of a claimant such as Plaintiff, "[t]he adversity of functional restrictions to sedentary work at advanced age (55 and over) for individuals . . . who can no longer perform vocationally relevant past work and have no transferable skills," may warrant a finding of disability. 20 C.F.R. part 404, subpt. p, app. 2, 201.00(d). Thus, if the ALJ had not found that Plaintiff could perform PRW, Plaintiff may have been found to be disabled prior to his EDOD.[11]

SSR 82-61 provides that a claimant will be found not disabled at step four if "he retains the RFC to perform: (1) The actual functional demands and job duties of a particular past relevant job; or (2) The functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Rulings 1983-1991*, *supra*, at 838. The Ruling adds, as to the second category:

> (The Dictionary of Occupational Titles (DOT) descriptions can be relied upon—for jobs that are listed in the DOT—to define the job as it is usually performed in the national economy.) *It is understood that some individual jobs may require somewhat more or less exertion than the DOT description.*
>
> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. *Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties*

---

[11] *See* 20 C.F.R. part 404, subpt. p, app. 2, §§ 200.00, 201.00. If the ALJ finds Plaintiff could no longer perform his PRW prior to his EDOD, he will consult these Guidelines as part of his disability-determination analysis.

> *as generally required by employers throughout the economy, the claimant should be found to be "not disabled."*

*Id.* (emphases added).

In the instant case, the ALJ found, based on the VE's testimony, that Plaintiff retained the RC to perform his PRW as a loan officer, both as he actually performed it and as it is performed in the national economy, through his EDOD. Tr. 22-23. The ALJ stated that he "specifically asked" the VE if his opinions "were consistent with the occupational information provided in the [*DOT*]," and the VE answered in the affirmative. Tr. 23.

Plaintiff complains that the VE was mistaken in characterizing his PRW as a "loan officer." He makes several arguments on this point: (i) his "construction lending job" required him to go out to construction sites and make inspections, including climbing on ladders; (ii) his "loan officer" job entailed going out and talking with customers and bringing in new business, *see* Tr. 171; and (iii) on the loan officer job, he lifted up to twenty pounds and frequently lifted less than ten pounds, *see id.*. Plaintiff contends that he never performed "a strictly sedentary occupation for a substantial period of time." Pl.'s Br. 27. He adds that, even if the loan officer position was sedentary, there is no evidence he performed such an occupation for a "substantial period of time," but rather, he worked as both a loan officer and a branch manager at the same time. *Id.* (citing Tr. 32 ("I did a majority of the construction lending at the bank. I was also branch manager.")).

Because the undersigned recommends remand for consideration of medical evidence relevant to the period before Plaintiff's EDOD, the ALJ will necessarily re-evaluate and re-determine Plaintiff's RFC. After making that finding, the ALJ may or may not need to determine whether Plaintiff can perform his PRW. *See* 20 C.F.R. § 404.1520(a)(4) (noting that, if Commissioner can find claimant disabled or not disabled at a step, the Commissioner makes that

determination and does not go on with the analysis). In the event the ALJ considers whether Plaintiff can return to PRW, he should specifically discuss the requirements of Plaintiff's PRW, including the requirements of the work as Plaintiff actually performed it and the specifics of the PRW as it is generally performed, in determining whether Plaintiff can continue to perform PRW.

III. Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned cannot determine that the Commissioner's finding is supported by substantial evidence or without legal error.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action as detailed within.

IT IS SO RECOMMENDED.

July 10, 2012  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**